# CIRCUIT COURT OF HENRICO COUNTY

The Wyndham Foundation, Inc.

v.

Richard J. Oulton et al.

June 11, 2001

Case No. CH99-1468

BY JUDGE L. A. HARRIS, JR.

The above matter is before the court on Wyndham's action to enforce the covenants and restrictions which they contend prohibit Mr. and Mrs. Oulton from erecting the flagpole that is the subject of this controversy. This case concerns the pole that has been constructed and not the flying of any flag that Mr. and Mrs. Oulton choose to display. As is undisputed from the evidence, there is no restriction on the display of any flag as long as it is done in accord with the applicable restrictions and covenants of the community.

The initial question to be answered is whether the Wyndham covenants and restrictions apply to the property that is involved in this case. It is clear from both the law and the facts that they do apply. There is no question that the restrictions were a matter of record at the time of the purchase of the property by Mr. and Mrs. Oulton and that the property was subject to these restrictions and covenants. Unfortunately, as Mr. Oulton testified, he did not review the documents prior to his purchase. Additionally, the contract of purchase signed by the Oultons specifically states that the lots are subject to the Wyndham covenants and restrictions.

The next question to answer is what is prohibited by these covenants. Article XI of the Declaration of Covenants, Conditions, and Restrictions for Wyndham provides in part: "No structure shall be placed, erected, or installed upon any Unit . . . except in strict compliance with this article. . . ."

The covenants require the appropriate application process and approval prior to the erection of any such structure. Since it is agreed that no application

has ever been submitted for the pole now in place, the issue becomes the definition of structure and whether the pole in this case falls within that definition. *Webster's Third New International Dictionary* defines structure in part as: "Something built or constructed."

The Code of the County of Henrico in the definitions applied to zoning matters at Section 24-3 defines structure as: "anything constructed by an assembly of materials, the use of which requires a fixed location on the ground or attachment to something having a fixed location on the ground."

The Design Guidelines for Dominion View Estates give examples of site structures but expressly provide as follows: "If you wish to construct a structure and do not see it identified here or in any other article, contact the NCC to determine requirements."

Although the guidelines give specific examples of prohibited items, the examples are not exhaustive. Other items that are structures are also subject to the application and approval process. An examination of the pole in this case reveals the construction of a massive pole that is permanently affixed to the property and required excavation to install. After a consideration of the lay definition of "structure" in conjunction with the definition provided by the County of Henrico in a zoning context and most importantly the meaning of "structure" in the context of the restrictions and guidelines in this case, the only reasonable conclusion is that the Oulton's freestanding flagpole is a structure that is subject to regulation through the Wyndham covenants and restrictions. It is also important to note that there are no other freestanding flagpoles that have been approved in the entire 1500 lot community. Mr. and Mrs. Oulton argue that there are freestanding flagpoles at the entrance to the community, so they should be allowed to maintain the poles in question. This contention has no merit as the entrance to the community is for business purposes and not an individual home lot. For the same reason, a sign identifying the neighborhood may be permitted at the entrance, but it would not be permitted on the lot of a homeowner.

Having determined that the property in question is subject to the covenants and restrictions and that the flagpole in question is a structure in the context of the covenants and restrictions, the next inquiry is whether the application of the restrictions to this pole has been waived and whether there has been a settlement of this suit. I find no credible evidence that the flagpole was ever permitted by any representative of Wyndham or that the suit was settled by a representative of Wyndham.

In conclusion, this controversy concerns the authority to enforce restrictions and covenants that were a matter of record when Mr. and Mrs. Oulton purchased their property in this planned community. Covenants are for

the benefit of all property owners in the community, and, at best, it would be unfair to the other property owners who purchased lots with the knowledge of these covenants if they were not enforced. Although Mr. and Mrs. Oulton have good intentions in the construction and erection of their freestanding flagpole, they chose to purchase property in this planned community with the recorded restrictions. As previously stated, I find the freestanding flagpole to be a structure as contemplated by the covenants and restrictions and that the appropriate approval would be required before it could be constructed. Since no approval has been sought or obtained, I must order that the pole be removed within a reasonable period of time. As is evident, I find no constitutional violations in regulating the flagpole, nor do I find the statute now in place to be applicable to this case.

I urge counsel to seek to agree on a reasonable plan for the removal of the pole as well as the issue of attorney's fees. However, if this is not done, please set a date to be heard on these issues as soon as possible. If a hearing is scheduled, counsel should be prepared to present evidence to support their request.